# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JERRY ARCHULETA,

       Plaintiff,

vs.                                              No. CIV 04-0247 JB/DJS

CITY OF SANTA FE, SANTA FE POLICE
DEPARTMENT, JOHN DENKO, both in his
individual capacity and official former capacity
as Chief of Police, BEVERLY LENNEN, both
in her individual capacity and official capacity
as Chief of Police and ANDREW LEYBA, both
in his individual capacity and official capacity
as Captain in the Santa Fe Police Department,

       Defendants.

and

CITY OF SANTA FE, et al.,

       Defendants/Counter-Claimants,

vs.

JERRY ARCHULETA,

       Plaintiff/Counter-Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Stephen G. French's Motion to Quash Subpoena

and for Protective Order, filed March 11, 2005 (Doc. 46).  The Court held a hearing on this motion

July 11, 2005.  The primary issue is whether the Court should, on the record before it, preclude any

deposition of Mr. French.  Consistent with the Court's ruling at the hearing on this motion, and for

the reasons given at the time of the hearing, the Court will grant the motion in part and quash the subpoena, but deny the motion in part and decline to enter a protective order at this time.

## FACTUAL BACKGROUND

This action for damages arises out of Plaintiff Jerry Archuleta's demotion from the rank of lieutenant to the rank of sergeant, and the subsequent termination of his employment, with the Santa Fe Police Department. The Santa Fe Police Department maintains that Archuleta falsified health documents and that, as a result, the Defendants terminated Archuleta's employment with the City of Santa Fe Police Department.

While Mr. French is currently an attorney representing the Defendants in this case, before the case began, he and his firm had a different role in matters relating to Archuleta. Before this lawsuit began, Mr. French represented the Defendants in connection with the termination of Archuleta's employment from the Santa Fe Police Department.

Before his termination, Archuleta had been disciplined for failing to respond appropriately when a seven-year-old child was reported missing. The child was never found, and as a result of that incident, Archuleta was demoted from the rank of lieutenant to the rank of sergeant, effective November 25, 2000. In addition to his demotion, Archuleta was required to undergo additional training. Archuleta filed an administrative appeal of his demotion, a hearing officer appointed by agreement of the parties found that there was just cause for Archuleta's demotion, and the Grievance Review Board for the City of Santa Fe adopted the hearing officer's Finding of Fact and Recommended actions. On November 30, 2001, Archuleta appealed the Grievance Review Board's decision by filing a complaint in the First Judicial Court in Cause No. D-101-CV-2001-02729. After the First Judicial District Court affirmed the Grievance Review Board's decision, the Supreme Court

of New Mexico heard the case.  The Supreme Court recently held that there was just cause for Archuleta's demotion.  See <u>Archuleta v. Santa Fe Police Dep't</u>, 108 P.3d 1019, 137 N.M. 161 (2005).

In the litigation that arose out of Archuleta's demotions, Archuleta contended that his demotion was part of a series of retaliatory actions taken against him.  See <u>id.</u> 108 P.3d at 1024.[1] Although SFPD disciplined Archuleta before the events that led to his demotion, Archuleta tried to explain these actions at the hearing on his demotion.  See <u>id.</u>  Archuleta also asserted at the hearing on his demotion that he had been subjected to retaliatory actions by a police captain, and that he was being unfairly blamed for the possible murder of a seven-year-old child.  See <u>id.</u>  In short, Archuleta took the position that, each time he was subjected to disciplinary action, retaliatory motives motivated those actions.  In its discussion, the Supreme Court noted that Archuleta had contended that his demotion was part of a series of retaliatory actions taken against him.  See 108 P.3d at 1024, 1030-31.  In finding that Archuleta's demotion was nonetheless proper, the Supreme Court therefore necessarily rejected Archuleta's argument that he was demoted for retaliatory reasons.

The City of Santa Fe's Human Resources Department requested that Mr. French's firm conduct an investigation.  From April 18, 2002 to at least June 18, 2002,  the City of Santa Fe retained Mr. French's firm to investigate the allegations that Archuleta inappropriately added an individual to his City insurance policy in 1997.  In that capacity, Mr. French hired investigators to address allegations that Archuleta had fraudulently added a woman and her daughter as dependents on his health insurance when the woman was not his wife, and that neither the woman nor her

---

[1] At the time the Court filed this Memorandum Opinion and Order, only pagination to the Pacific Reporter was available.

daughter were Archuleta's legal dependents.  Although Mr. French needed to investigate the factual basis for the allegations that Archuleta had falsified documents to advise his client on these matters, Mr. French did not personally conduct that investigation.

Mr. French thereafter prepared and completed a report to the City that summarized the investigator's findings, and set out conclusions whether Archuleta had violated applicable agreements, rules, regulations, policies or laws.  See Letter from Stephen French to Arturo Rodriguez (dated June 18, 2002).  In his report, Mr. French indicates that the City asked his firm to "look into allegations" related to Archuleta's adding of a dependent to his insurance policy five years earlier. The report does not mention that the City hired Mr. French in the capacity of an attorney to represent it.  Mr. French's report states the names of the investigators who interviewed witnesses.  The report on its face indicates that the investigators did not interview Archuleta because of certain procedures required to interview him, but does not provide an explanation why the investigators did not pursue those procedures.

Mr. French's report sets out his legal opinion that Archuleta violated certain specified agreements, rules, and regulations when Archuleta falsified health insurance documents.  See Report at 7-8.  The report also provides Mr. French's legal opinions about relevant considerations in determining what discipline, if any, would be warranted, and whether Archuleta's actions also constituted a crime.  See id. at 9-10.

Mr. French issued his report concerning the allegations that Archuleta had falsified health insurance documents on June 18, 2002.  Based on Mr. French's investigation, the City initiated personnel actions that ultimately resulted in Archuleta's termination as a Santa Fe City police officer. In accordance with Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), Archuleta

received a pre-termination hearing in front of Defendant John Denko, who was Chief of the Santa Fe Police Department. Mr. French represented the Defendants at that hearing and, although his union and counsel represented him, Archuleta chose not to speak or to produce any evidence at that hearing. Archuleta did object to proceeding because of Mr. French's dual role of investigator and attorney for the City. Archuleta alleges that, subsequently, Mr. French, on the City's behalf, threatened Archuleta with criminal prosecution.

After the hearing, Denko recommended to the City Manager that the City terminate Archuleta. Archuleta thereafter pursued an administrative appeal of the City Manager's decision to terminate his employment. Pursuant to a provision in the Santa Fe police officers' union contract, Mr. French and the attorney representing Archuleta agreed that retired state district court judge W.C. "Woody" Smith would hear Archuleta's appeal of the City Manager's decision.

There is not any dispute that a neutral arbitrator upheld the propriety of Archuleta's termination in the administrative process that the County provided him. Counsel represented Archuleta and the Defendants at the hearing before Judge Smith. The parties presented the testimony of several witnesses as well as other evidence. After considering all of the evidence, Judge Smith upheld Archuleta's termination and concluded that there was just cause for Archuleta's termination. Archuleta did not appeal the arbitrator's decision.

In this lawsuit, Archuleta' position is that Mr. French's investigation and subsequent threats are part of, and evidence of, the retaliatory nature of the Defendants' actions against Archuleta. Archuleta alleges that the Defendants engaged in an unlawful retaliatory campaign against him. In his view, part of that campaign was the Defendants' initiation of the investigation by Mr. French's firm into the allegations about Archuleta's inclusion of an individual on his health insurance five

years earlier.

Archuleta alleges that part of the reason for the retaliation was that he was appealing his demotion, which was related to the Robbie Romero investigation.  Mr. French represents the City in the litigation that the Romero family has initiated against it and certain individuals.

## PROCEDURAL BACKGROUND

Archuleta alleges that the Defendants have engaged in a campaign of unlawful retaliation against him.  The First Amended Complaint alleges that the Defendants acted without just cause and in violation of Archuleta's constitutional, statutory, and common-law rights.  Archuleta seeks an award of compensatory and punitive damages, as well as an award of attorney's fees and costs.

French is co-counsel representing the Defendants in this lawsuit.  During the course of discovery in this lawsuit, the Defendants produced to Archuleta Mr. French's written report to the City on the investigators' findings regarding the insurance fraud and all documents that supported that report.  See Letter from Stephen French to Arturo Rodriguez (dated June 18, 2002).  Additionally, both the pre-termination hearing and the administrative appeal before Judge Smith were transcribed, and Mr. French has or should have the transcripts of those proceedings, as well as the exhibits introduced at those proceedings.  The Defendants have also disclosed the names of the independent investigators to Archuleta in the Amended Initial Pre-Trial Report, filed January 6, 2005 (Doc. 32).

The Defendants have filed a motion for summary judgment in which they contend that the doctrine of collateral estoppel bars Archuleta's claim that he was terminated for retaliatory reasons.  See Doc. Nos. 30, 31.  The Defendants have cited authority, which they contend requires a finding that collateral estoppel bars Archuleta from re-litigating the issue whether the Defendants had just

-6-

cause to terminate him.

When Archuleta's counsel indicated that she wished to depose Mr. French, the Defendants' attorneys advised that the attorney-client privilege covered matters that were not already in the record.  See Letter from Robyn Hoffman to Maureen Sanders, Esq. (dated November 9, 2004).  In an effort to resolve the matter without court intervention, the Defendants' attorneys requested that Archuleta's counsel forward written questions to Mr. French so that he could determine whether he could provide the information that Archuleta sought.  See id.  The Defendants represent that Archuleta's counsel did not respond to this request.

On February 25, 2005, French received a notice of deposition and subpoena commanding him to appear at the offices of Archuleta's counsel on March 8, 2005.  See Notice of Deposition (dated February 24, 2005); Subpoena (dated February 24, 2005).  Archuleta subsequently served an amended notice of deposition that stated he would take French's deposition on Tuesday, March 22, 2005, at the offices of Archuleta's counsel.  See Amended Notice of Deposition (dated March 22, 2005).

On March 1, 2005, French filed a notice of non-appearance for his deposition.  See Doc. 42. French moves the Court, pursuant to rule 45(c)(3)(A)(iii) for an order quashing the subpoena that Archuleta issued and that commands French to appear for a deposition.  French further moves the Court, pursuant to rule 26(c), for a protective order barring Archuleta from taking French's deposition.

The Defendants have not joined in the motion.  Archuleta opposes this motion.  Pursuant to rule 26(c), French certifies that he has in good faith conferred with other affected parties in an effort to resolve the dispute without court action, but such efforts failed.

## LAW REGARDING ATTORNEY-CLIENT PRIVILEGE
## AND WORK-PRODUCT DOCTRINE

Rule 45(c)(3)(A) provides, in pertinent part:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

                    * * * *

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies . . . .

### 1.        Attorney-Client Privilege.

The burden of establishing the applicability of a privilege rests with the parties who assert the privilege.  See United States v. Bump, 605 F.2d 548, 551 (10th Cir. 1979).  To invoke the attorney-client privilege or the attorney work-product protection, an individual must first establish that he or she was acting as an attorney.  "The privilege protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor."  In re Grand Jury Subpoena Duces Tecum, 697 F.2d 277, 278 (10th Cir. 1983)(quoting Fisher v. United States, 425 U.S. 391, 403 (1976)).

The privilege is to be narrowly construed.  In re Grand Jury Subpoena Duces Tecum, 697 F.2d at 278.  The attorney-client relationship does not create an automatic "cloak of protection . . . draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client."  United States v. Goldfarb, 328 F.2d 280, 281-82 (6th Cir. 1964)(holding that communications made to attorney in course of professional employment by persons other than client or his agent are not privileged).

-8-

2.      **Work-Product Doctrine**.

The Supreme Court of the United States set out the parameters of the work-product rule in

Hickman v. Taylor, 329 U.S. 495 (1947).  In Hickman v. Taylor, the plaintiff sought to compel

defense counsel to prepare and to provide summaries of interviews he had conducted with witnesses

for purposes of litigation.  In refusing the plaintiff's request, the Supreme Court wrote:

> Here is simply an attempt, without purported necessity or justification, to secure . . . personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties.  As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims.  Not even the most liberal of discovery theories can justify unwarranted inquiries into . . . the mental impressions of an attorney.

Id. at 510.

The work-product privilege applies only to certain information or impressions that an

individual obtains while acting as an attorney in anticipation of litigation.  See id. at 511.  The mere

fact that litigation eventually ensues does not necessarily cloak materials with work product

immunity.  See Binks Mfg. Co. v. Nat'l Presto Indus. Inc., 709 F.2d 1109, 1118 (7th Cir. 1983).

In In re Grand Jury Investigation, 599 F.2d 1224 (3d Cir. 1979), the government sought to

discover certain documents that an attorney prepared during an internal corporate investigation of

certain business transactions.  The attorney who prepared the documents asserted work-product

protection, and the government sought to compel production.  In upholding the assertion of work-

product protection, the United States Court of Appeals for Third Circuit stated that it saw "no reason

to distinguish between [an attorney's] role as a legal advisor and its role as an investigator."  Id. at

1229.  As support for its finding, the Third Circuit wrote: "The attorney in [Hickman v. Taylor] acted

in a similar dual capacity when he interviewed witnesses."  Id.  Thus, the court held that work

-9-

product protection applied because the attorney was acting in contemplation of litigation.  See id. at 1230.

## ATTORNEY-AS-WITNESS RULES

"[F]orcing trial counsel to testify as a witness" is disfavored.  See, e.g., Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986)(citing Hickman v. Taylor, 329 U.S. at 513).  As the United States Court of Appeals for the Eighth Circuit stated in Shelton v. American Motors Corp.:

> Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation.  It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised by the attorney's testimony.  Finally, the practice of deposing opposing counsel detracts from the quality of client representation.  Counsel should be free to devote his or her time and efforts to preparing the client's case without fear of being interrogated by his or her opponent.  Moreover, the "chilling effect" that such practice will have on the truthful communications from the client to the attorney is obvious.

Id.

The law therefore permits trial courts to issue protective orders pursuant to rule 26(c) that bar depositions of opposing counsel.  In Boughton v. Cotter Corp., 65 F.3d 823 (10th Cir. 1995), the United States Court of Appeals for the Tenth Circuit adopted a three-prong test to be used in analyzing whether a party can take opposing counsel's deposition.  Id. at 829-30.  In this circuit, courts may issue such protective orders when any one or more of those criteria are not met.  See id. at 830 ("[O]rdinarily the trial court . . . has the discretion under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three . . . criteria for

-10-

deposition listed above are *not* met."); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1112 (10th Cir. 2001).

The first prong is that "no other means exist to obtain the information than to depose opposing counsel." Boughton v. Cotter Corp., 65 F.3d at 829 (citing Shelton v. Am. Motors Corp., 805 F.2d at 1327). The second prong is that "the information sought is relevant and nonprivileged." See Boughton v. Cotter Corp., 65 F.3d at 829. The third and final prong is that "the information is crucial to the preparation of the case." Id. The party seeking to take the deposition of opposing counsel bears the burden of establishing that the three factors are satisfied. See id. at 831 n.10.

## ANALYSIS

The Court will not, pursuant to rule 26(c), enter a protective order barring Archuleta from taking French's deposition at any time in this case. The grounds that Mr. French advance to preclude any deposition do not provide an adequate basis for such an order. The Court understands that some information known by French may be privileged, but it is not clear that everything he knows is protected. Accordingly, the Court will allow Archuleta to submit interrogatories to the City of Santa Fe and to Mr. French, as well as to depose the two investigators. The Court will therefore grant the Defendant's motion to quash the subpoena, but will deny their request to enter a protective order at this time.

## I.    THE COURT WILL ALLOW LIMITED, ADDITIONAL DISCOVERY TO DETERMINE THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN MR. FRENCH AND THE CITY OF SANTA FE.

In characterizing Mr. French's role as that of an investigator and not as an attorney, Archuleta does not take fully into account that Mr. French set out legal opinions in his report. The report sets forth legal advice that Mr. French provided to the City, his client. An attorney may act

as an attorney and as an investigator at the same time.

A review of the claims that Archuleta asserted before Mr. French's investigation establishes that, when the City retained Mr. French to look into allegations that Archuleta had falsified health insurance documents, the Defendants had reason to anticipate that any actions that the Defendants took against Archuleta as a result of Mr. French's findings would result in further litigation. They also had reason to believe that Archuleta would contend that any subsequent disciplinary actions imposed upon him were part of the same alleged campaign of retaliation. Given the contentions that Archuleta made before Mr. French began his investigations, the Defendants had reason to anticipate that additional litigation would result from any subsequent disciplinary actions taken against Archuleta.

Thus, the attorney-client privilege and the work-product doctrine may well protect some of the information that Archuleta seeks. See Sanchez v. Matta, No. CIV 03-0297 JB/LFG, Memorandum Opinion at 11-20, filed June 24, 2004 (Doc. 83). Even if Mr. French were acting only as an investigator, he would still be entitled to invoke work-product protection. Mr. French prepared the report in anticipation of litigation. As such, even if there were support in the record for finding that Mr. French was acting as an investigator and not as an attorney, the work-product rule would protect the information that Archuleta seeks.

Because the current record before the Court does not reflect how the City of Santa Fe perceived its relationship with Mr. French, the Court will permit Archuleta to submit a maximum of ten interrogatories to the City of Santa Fe to inquire about the nature and extent of Mr. French's attorney-client relationship with the City.

## II.   <u>THE COURT WILL QUASH THE SUBPOENA.</u>

Mr. French contends that Archuleta has provided no grounds how his deposition could provide relevant information.  Archuleta seeks to depose Mr. French, however, as a fact witness.  For this purpose, Mr. French may provide information that will lead to admissible evidence.

Archuleta primarily seeks to learn whether the Defendants initiated Mr. French's investigation for retaliatory purposes.  Archuleta wishes to question French about his involvement in the City's actions that led to Archuleta's termination from the Santa Fe Police Department.  Archuleta also wishes to ask Mr. French how he reached his opinions, which are stated in the report, that Archuleta violated applicable agreements, rules, regulations, policies, and/or laws.

Specifically, Archuleta wishes to ask questions of Mr. French as to his role as investigator and as to what steps, if any, he or others took to refer the matter to the district attorney or other authorities for possible prosecution.  Except as protected by privilege or the work-product doctrine, Archuleta has the right to look behind Mr. French's investigative report to see if wrongful intentions initiated that investigation.  Presumably, the Human Resources Department or other City personnel contacted Mr. French and requested him to conduct the investigation.

The only person who may have the overall picture of the investigation is Mr. French.  Mr. French may be the one who knows who was involved in the investigation's initiation.  Throughout the report, he indicates that steps were taken at his direction.  He is the one who knows everyone involved in the investigation and in the drafting of the report.

Nevertheless, there will be limits to what Archuleta can learn from Mr. French.  To obtain information whether wrongful intentions motivated the Defendants' decision to initiate an investigation, Archuleta would necessarily have to question Mr. French about his communications

with his client.  If Archuleta wishes to question Mr. French about his communications with his client

relating to his termination, the attorney-client privilege protects those communications.  <u>See</u>

<u>generally</u> <u>In re Grand Jury Subpoena Duces Tecum</u>, 697 F.2d at 277 (holding that privilege protects

confidential communications between attorney and client made to obtain legal assistance from the

attorney in his capacity as legal advisor).

      To the extent that Archuleta wishes to question Mr. French about how he reached his

opinions that Archuleta violated applicable agreements, rules, regulations, policies, and/or laws when

he falsified health insurance documents, the work-product rule protects that information from

disclosure.  The Supreme Court rejected a similar attempt to secure information from defense

counsel in <u>Hickman v. Taylor</u>.  Mr. French's opinions about Archuleta's wrongdoing, and the

manner in which he reached those opinions, are, therefore, protected work product.

      The precise demarcation of what information the Defendants have already waived privilege

or protection, what may be unprotected, and what they may be willing to disclose, is not clear on the

record before the Court.  After all, the Defendants provided Mr. French's report to Archuleta.  The

Defendants did not raise the attorney-client privilege or the work-product doctrine as to the

investigative report that Mr. French completed for the City's Human Resources Department.

Archuleta maintains that this signifies that the Defendants apparently recognized that the report did

not enjoy a privilege.  Archuleta maintains that, if, in the Defendants' eyes, the report has no

privilege, it is unclear whether Mr. French can assert, or has any interest in asserting, that the

underlying conversations, information, and mental impressions he had regarding the investigation

should enjoy a privilege from discovery.

      Attorneys can chose to waive the privilege and to selectively waive work-product protection.

It is unclear the parameters of what the City has waived or wants to waive.  Regardless, Mr. French may harbor, as a fact witness, some information not protected by privilege that will lead to admissible evidence.  Mr. French is likely -- either because the City will waive some privilege or work-product protection or because it already has done so -- to be able to provide some more information.

Before forcing Mr. French to submit to a deposition to inquire about non-privileged matters, however, Archuleta must first exhaust all means to obtain the information sought.  Archuleta has not made such a showing.  The Court will therefore allow Archuleta to depose the two investigators.  The Court will also allow Archuleta to serve on Mr. French twenty-five interrogatories.  If, after the depositions of the investigators and after receiving the answers to the interrogatories, Archuleta believes Mr. French can still provide additional, non-privileged information, he can arrange another deposition, and the Court can address the issues in a more focused light.

## III.   <u>THE COURT WILL NOT ENTER A PROTECTIVE ORDER AT THIS TIME.</u>

Mr. French argues that the attorney-as-witness rules adopted by the Tenth Circuit preclude his deposition entirely.  Archuleta does not dispute that the Court can, in some instances, issue a protective order to preclude the deposition of an opposing counsel.  It is, however, difficult to address this issue in the abstract.  Based on the record before the Court, the issues are not sufficiently defined such that it can determine whether a protective order is warranted.

Unless and until this issue comes before the Court on a more focused, specific record as to what information Archuleta seeks from Mr. French, it will not enter a protective order.  If Archuleta, after deposing the two investigators and reviewing the interrogatories' answers, continues to seek a deposition of Mr. French, and Mr. French believes that a protective order is warranted, Mr. French

may bring that matter to the Court's attention anew if and when it arises.

**IT IS ORDERED** that Stephen G. French's Motion to Quash Subpoena and for Protective Order is granted in part and denied in part.  The Court will quash this subpoena, but will not enter a protective order at this time.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Maureen A. Sanders
Duff Westbrook
Sanders & Westbrook, P.C.
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Stephen G. French
Robyn Hoffman
French & Associates, P.C.
Albuquerque, New Mexico

*-- and --*

James P. Sullivan
Sullivan & Grand, P.A.
Santa Fe, New Mexico

    *Attorneys for the Defendants*

Patrick J. Rogers
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for Stephen G. French*

-16-