IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY ARCHULETA,

        Plaintiff,

vs.                                            No. CIV 04-00247 JC/DJS

CITY OF SANTA FE, SANTA FE
POLICE DEPARTMENT, JOHN DENKO,
both in his individual and official former
capacity as Chief of Police, BEVERLY
LENNEN, both in her individual and
official capacity as Chief of Police and
ANDREW LEYBA, both in his individual
and official capacity as Captain in the Santa Fe
Police Department,

        Defendants,

and,

CITY OF SANTA FE, et al.,

        Defendants/Counter-Claimants,

vs.

JERRY ARCHULETA,

        Plaintiff/Counter-Defendant.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant City of Santa Fe's Motion for Summary Judgment on Counterclaims of Negligent Misrepresentation and Intentional Misrepresentation, filed September 7, 2005 (*Doc.* 75). Defendant moves for judgment in this case

on the grounds that (1) Plaintiff negligently misrepresented the facts of his familial situation to Defendant; (2) Plaintiff intentionally or fraudulently made a misrepresentation to Defendant; and (3) Defendant also requests pre-judgment and post-judgment interest.  The Court, having reviewed the Motion, memoranda and exhibits submitted by the parties, finds the Motion is **granted in part and denied in part**.

**I.   Background**

In September 1997, Defendant provided medical insurance to its employees and their dependents through a self-funded group plan, "the Santa Fe Group Plan" (Plan), which was administered by a third party administrator, CareSource.  The Plan defined a dependent as a "lawful spouse" and "unmarried child."  Plaintiff represented to the City on September 21, 1997, and thereafter, that an Anne Romero was his wife and Breanna Aguilar was his daughter, although this was not the truth.  When making this representation, Plaintiff actually changed the names of Anne Romero and Breanna Aguilar to "Anne Archuleta" and "Breanna Archuleta" on the insurance forms, so as to reflect their fictional relationship with Plaintiff.  During the time that these two persons were listed as dependents on Plaintiff's insurance, $20,054.74 worth of claims were submitted for them.  Defendant paid on these claims and now seeks reimbursement under two tort theories of liability, as well as pre-judgment and post-judgment interest.

**II.   Standard of Review**

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993).  The moving party bears the

initial burden of establishing that no genuine issue exists as to any material fact. *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993).  Once the initial burden has been met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve.  *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986)).

**III.** **Discussion**

    **A.** **Negligent Misrepresentation**

To recover under a claim of negligent misrepresentation, Defendant must show that (1) Plaintiff made a material misrepresentation of fact; (2) Defendant relied upon such misrepresentation; (3) Plaintiff knew the representation was false at the time it was made or made it recklessly; and (4) Plaintiff intended to induce Defendant to rely on such representation. *Saylor v. Valles*, 63 P.3d 1152, 1158 (N.M. Ct. App. 2002) (citing *Parker v. E.I. DuPont de Nemours & Co.*, 909 P.2d 1, 13 (N.M. Ct. App. 1995)).  Defendant asserts that Plaintiff clearly meets each element of this tort. The Court primarily agrees with this assertion.

Regarding the first element, it is not disputed that Plaintiff made a material misrepresentation to Defendant by falsely listing Anne Romero as Anne "Archuleta" and Breanna Aguilar and Breanna "Archuleta" on his insurance policy forms.  Resp. at 2.  Plaintiff denies that he "represented" to the City that Anne and Breanna were his natural dependents because he acted under the guidance of benefits employee Charles King.  *Id*.  This does not change the fact,

3

however, that Plaintiff admits he was not truthful about naming Anne Romero and Breanna Aguilar as Anne Archuleta and Brenna Archuleta, thus representing to the City that these people were his natural and legal dependents, and therefore entitled to partake of his insurance benefits.

The second element of this tort is also not generally in doubt. Plaintiff denies that Defendant relied upon the representation made, but only to the extent of the amount paid toward Plaintiff's claims. There is no dispute about whether any amount was paid toward the claims filed, which is certainly evidence of reliance, but there is a legitimate issue about how much the City did actually pay toward Plaintiff's claims. Resp. at 7. Defendant claims that it paid benefits to the medical providers in question in the amount of $20,054.74. Def.'s Ex. F, Gage Aff. 2:8. Yet, as Plaintiff asserts, the claim inquiry submitted by CoreSource indicates that the amount actually paid on these claims by the City, at least as to Anne Romero, was only $9,442.92. *See* Def.'s Ex. G. While a total *benefit* of $18,474.30 may have been attributed to Ms. Romero, the documented amount actually *paid* by the City right now rests at $9,442.92. *Id*. Add to this the City's own investigator commenting on the discrepancy in numbers in his report, and a genuine issue of material fact as to this point does seem to remain. *See* Def.'s Ex. 5 to Def.'s Mem. in Support of their Mot. for Summary Judgment on Counts I, II and VI at 10.

The third element of the tort is unequivocally met, as Plaintiff admits that he knew at the time of making the statements to the City that they were false. Def.'s Ex. D, Archuleta Dep. 127:8-25, 128:1-20.

The fourth element is also met. Plaintiff made these representations in order to obtain medical insurance for Anne Romero and Breanna Aguilar. This appears to be undisputed. Resp. at

4

3, Undisputed Fact 12. With this intent of obtaining medical insurance (See Resp. at 8), and misrepresenting their status as dependents, Plaintiff thereby induced the City to pay for his girlfriend and her daughter's claims.

Plaintiff asserts that a negligent misrepresentation claim above all depends on the reasonableness of one's actions. *See Western State Mech. Contractors, Inc. v. Sandia Corp.*, 798 P.2d 1062, 1066 (N.M. Ct. App. 1990). Even using this as a basis of analysis, the Court cannot envision a reasonable person making the representation that someone had a different name so that they could be dependents for insurance purposes.

Therefore, all elements of the negligent misrepresentation claim, in terms of Plaintiff's liability, are deemed undeniably met, with no possible genuine issue of material fact presented. However, the extent to which Defendant relied upon Plaintiff's negligent misrepresentation, or the amount of damages actually suffered, is, in the Court's opinion, still a material issue to resolve. The Court, therefore, is inclined to grant summary judgment as to liability in this claim, but not as to the extent of damages. S*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 323 n. 4 (1986); *Childers v. Indep. Sch. Dist. No. 1 of Byran County, State of Okla.*, 676 F.2d 1330, 140 n.2 (10th Cir. 1982) (citing FED. R. CIV. P. 56(c), "A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.").

### B.     Fraudulent Misrepresentation

The Court is inclined to agree with Plaintiff that asserting both the claims of negligent and fraudulent misrepresentation, and actually seeking to recover on both simultaneously, seems to be

5

an assertion of claims that are mutually exclusive. Resp. at 5. Acting recklessly and actually having the intent to deceive are two very different states of mind. Defendant's attempt to have its cake and eat it too will not be granted here. The fraudulent misrepresentation claim does not survive summary judgment, as the Court finds it impossible to have Plaintiff meet the elements of both torts asserted. As Defendant clearly establishes, the intent required for each tort is decidedly different. Mem. at 7, n. 1. Both levels of intent could not have been derived from the same act.

Further, however, the Court believes that a genuine issue of material fact would exist as to the intent required for fraudulent misrepresentation. A clear intent to deceive the City is required here, as fraudulent misrepresentation requires an intent to deceive and induce Defendant to act. *See Williams v. Stewart*, 112 P.3d 281, 290 (N.M. Ct. App. 2005). It is not clear to the Court, however, that Plaintiff actually did have this intent. As Defendant makes clear, "fraudulent misrepresentation requires an intent to deceive, while negligent misrepresentation only requires an intent that the plaintiff receive and be influenced by the statement where it is reasonably foreseeable that the plaintiff would be harmed if the information conveyed was incorrect or misleading." *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 953 P.2d 722, 735 (N.M. Ct. App. 1997)(citation omitted).

A higher standard of proof must be met when claiming a fraudulent action. Defendant must be able to show by clear and convincing evidence that Plaintiff really had the requisite intent to deceive the City by his actions. *Id*. Defendant can only point to the dependent status form itself for direct evidence of this requisite intent, while Plaintiff asserts that a City employee told him he should fill out the forms the way that he did, and he has two witnesses who back up this

assertion. Plaintiff's alleged duplicitous intent is further negated by his attempt to pay back the money administered once he definitively knew that his actions were wrong. While the Court is strained to contemplate the possibility that any employee would believe lying about a dependent's last name on an insurance form would be legal; the Court does not consider this scenario outside the realm of possibility. The Court does believe, however, that a reasonable person would realize this action to be reckless and likely to cause some sort of injury to the party that it was represented to, here, the City. This level of intent, however, is what is required for negligent misrepresentation. A willing intent to deceive, here, has not been clearly and convincingly established. Therefore, summary judgment as to Count II is denied.

  **C.**  **Defenses of Waiver and Estoppel**

    1.  Equitable Estoppel

Plaintiff is claiming estoppel because he believed and relied on City benefits employee, Charles King, when he was told that he could list his girlfriend and her daughter as his dependents, but needed to change their names to obtain coverage. As Defendant notes, courts are reluctant to apply estoppel against a government entity. *Kilmer v. Goodwin*, 99 P.3d 690, 697 (N.M. Ct. App. 2004). Yet, in rare cases of aggravation or overreaching conduct, justice will demand it. *Id*. As noted in *Kilmer*, a four-part test must be satisfied to bring an estoppel action against a state entity. The test is as follows: (1) the government knew the facts; (2) the government intended its conduct to be acted upon or so acted that plaintiff had the right to believe it was so intended; (3) plaintiff must have been ignorant of the true facts; and (4) plaintiff reasonably relied on the government's conduct to their injury. *Id*.

Here, Plaintiff has a problem meeting at least two of these elements. First, Plaintiff was not ignorant of the true facts, as is required by element three. Plaintiff knew what his true relationship with Anne Romero and Breanna Aguilar was, but represented something different to the City. Second, it is also debatable whether the City knew the true facts of the matter, as required by the first element. Plaintiff claims that City employee Charles King knew that Anne Romero and Breanna Aguilar were not his real dependents, yet Mr. King denies this conversation took place. Further, once the City undeniably became aware that Plaintiff had not listed his true dependents, they affirmatively acted to rectify the situation.

Further still, when the alleged representations made by the government are purely oral, as in this case, it is much harder to prove estoppel. *Id.* (citing *Taxation & Revenue Dept. v. Bien Mur Indian Mkt. Ctr.*, 770 P.2d 873, 876 (N.M. 1989)). Indeed, anything written about Plaintiff's insurance policy flatly contradicted what he had allegedly been told by Charles King. *See* Def.'s Ex. A.

Therefore, the affirmative defense of equitable estoppel has not been established.

    2.    Waiver

Plaintiff argues that the City waived its right to deny dependent coverage to Plaintiff because Charles King told Plaintiff to lie on his dependent status form. Resp. at 10-11. Waiver is an "intentional relinquishment or abandonment of a known right." *In re Salopek*, 107 P.3d 1,3 (N.M. App. 2004) (citing *J.R. Hale Contracting Co. v. United N.M. Bank*, 799 P.2d 581, 585 (N.M. 1990)). "To prove waiver by estoppel the party need only show that he was misled to his prejudice by the conduct of the other party into the honest and reasonable belief that such waiver

was intended." *Cafeteria Operators, L.P., v. Coronado-Santa Fe Assoc., L.P.*, 952 P.2d 435, 440-441 (N.M. Ct. App. 1997) (citation omitted).

Here, Plaintiff may have had an honest belief that Charles King was somehow waiving the City's right to deny dependent coverage in his case, but this belief certainly was not reasonable. No reasonable person could or should assume that after a discussion about church attendance and income tax intricacies, followed by instructions to change dependents' names, would be a legal extension of insurance benefits. As Defendant notes, it strains further credulity that a reasonable police officer would believe that insurance had been legally extended in these circumstances. Reply at 6.

Therefore, the affirmative defense of waiver has not been established.

### D.     Interest

As the court is unable to determine the amount of damages suffered by Defendant from Count I, it follows that the Court is also unable to determine the amount which would be used to calculate pre-judgment and post-judgment interest. Therefore, summary judgment is denied as to these claims as well.

Wherefore,

- **I.   IT IS ORDERED that Defendant City of Santa Fe's Motion for Summary Judgment on Counterclaims of Negligent Misrepresentation and Intentional Misrepresentation, filed September 7, 2005 (Doc. 75) is GRANTED as to liability in Count I, Negligent Misrepresentation, but DENIED as to damages.**
- **II.  IT IS FURTHER ORDERED that Summary Judgment as to Count II, Intentional Misrepresentation is DENIED.**
- **III. IT IS FINALLY ORDERED that Summary Judgment as to pre-judgment and post-judgment interest is DENIED.**

**DATED** this 5th day of January, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Maureen A. Sanders, Esq.
    Duff Westbrook, Esq.
    Sanders & Westbrook, P.C.
    Albuquerque, New Mexico

Counsel for Defendants:

    Stephen G. French, Esq.
    Robyn Hoffman, Esq.
    French & Associates, P.C.
    Albuquerque, New Mexico

    James P. Sullivan, Esq.
    Sullivan Law Firm, P.A.
    Santa Fe, New Mexico