# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JERRY ARCHULETA,

       Plaintiff,

vs.                                      No. CIV-04-00247 JC/DJS

CITY OF SANTA FE, SANTA FE
POLICE DEPARTMENT, JOHN DENKO,
both in his individual and official former
capacity as Chief of  Police, BEVERLY
LENNEN, both in her individual and
official capacity as Chief of Police and
ANDREW LEYBA, both in his individual
and official capacity as Captain in the Santa Fe
Police Department,

       Defendants,

and,

CITY OF SANTA FE, et al.,

       Defendants/Counter-Claimants,

vs.

JERRY ARCHULETA,

       Plaintiff/Counter-Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Defendants' Motion for Summary

Judgment on Counts I, II and VI of the First Amended Complaint, filed September 14, 2005

(*Doc.* 88)(Mot. 1) and Defendants Denko, Lennen and Leyba's Motion for Summary Judgment,

filed September 9, 2005 (*Doc*. 82) (Mot. 2).   Defendants move for judgment in this case on the

following grounds: (1) Plaintiff received adequate procedural due process; (2) Plaintiff's speech

was not entitled to First Amendment protection; (3) Plaintiff's lack of a First Amendment claim

results in Plaintiff's substantive due process claim failing; (4) Plaintiff was not subject to any

retaliation resulting in his termination for redressing his grievances under § 1983; and (5)

Plaintiff's contract claim is barred by collateral estoppel.   The individual Defendants assert these

same grounds in their separate motion for summary judgment, as well as the defense of qualified

immunity.   The Court has reviewed the Motions, the memoranda and exhibits submitted by the

parties, and the relevant authorities.   The Court finds the Motions well taken and they are

**granted**.

## I.       Background

Plaintiff Jerry Archuleta began working for the City of Santa Fe Police Department in

1991.  In November of 2000, Plaintiff was demoted for actions related to his involvement in the

Police Department's handling of the disappearance of seven-year-old Robbie Romero.  Plaintiff

appealed this demotion with the Police Department and lost.  After this administrative appeal,

Plaintiff took his case to the New Mexico courts, where the Supreme Court recently affirmed the

decision to demote as being procedurally sound.  *See Archuleta v. Santa Fe Police Dept.*, 108

P.3d 1019 (N.M. 2005).

In April 2002, subsequent to his demotion, Plaintiff was investigated on charges of

insurance fraud for listing his then girlfriend, Anne Marie Romero, and her child, Brianna Aguilar,

as Plaintiff's wife and natural child on medical and dental insurance policies since September

1997, a violation of the policies at that time.  The Department became aware of the problem by

2

late 2001. The Police Department retained a law firm, French & Associates, P.C., to investigate

the circumstances. The law firm, in turn, hired an independent investigation firm, Robert Caswell

Investigations, to interview witnesses.  The investigation concluded that Plaintiff knowingly listed

Ms. Romero and her daughter as beneficiaries on the policy and that the City of Santa Fe had paid

for medical services for Plaintiff and his named dependents in excess of $20,000.  Upon receiving

this information, and subjecting it to various levels of review, the Department started to take

action against Plaintiff.  Plaintiff was entitled to a pre-determination hearing, which the

Department claims he waived.  The City eventually decided to terminate Plaintiff, effective August

21, 2002.   Plaintiff then appealed the termination and invoked an arbitration proceeding under the

collaborative bargaining agreement that the Fraternal Order of Police, Santa Fe Police Officers

Association, had with the City.  A hearing was held on January 13, 2003.  In this proceeding, an

independent arbitrator was picked by both parties, and both sides were allowed to present

witnesses, introduce evidence, and make opening and closing arguments.  Further, Plaintiff was

represented by counsel in the hearing.  The arbitrator found sufficient cause for the Police

Department to terminate Plaintiff.  The ruling was not appealed to state court.

In addition to the two present motions for summary judgment, the Defendants have also

filed Defendant City of Santa Fe's Motion for Summary Judgment on Counterclaims of Negligent

Misrepresentation and Intentional Misrepresentation, filed September 7, 2005 (*Doc*. 79) (Mot. 3).

The Court has already ruled on Defendants'  Motion for Judgment on the Pleadings as to Count II

(*Doc*. 118), finding that Count II should be allowed to proceed to the extent that it is brought

under § 1983, and not as a state law claim.  The Court has also already ruled on Defendants'

Motion for Judgment on the Pleadings as to Plaintiff's  Substantive Due Process Claim asserted in

Count I (*Doc.* 124), finding that a substantive due process claim may be brought to the extent it arises from any violation of Plaintiff's First Amendment rights.  Defendants also have two motions in limine pending, which they wish to use as evidentiary support here as well.  Reply to Mot. 1 at 2.  These motions are Defendants' Motion in Limine to Exclude Evidence of City of Santa Fe's May 29, 2002 Adoption of Domestic Partners Policy, filed September 12, 2005 (*Doc.* 86) (Mot. 4) and Defendants' Motion in Limine to Exclude Evidence of Acts of Alleged Retaliation by City Occurring Prior to November 30, 2001, filed September 12, 2005 (*Doc.* 87) (Mot. 5).  Both Plaintiff and Defendants reference these motions, as well as the individual Defendants' motion for summary judgment, for both argument and evidentiary support.  The Court, then, has leave to consider Counts I, II, and VI of the First Amended Complaint, as to all Defendants.

## II.    Standard of Review

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993).  The moving party bears the initial burden of establishing that no genuine issue exists as to any material fact. *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993).  Once the initial burden has been met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve.  *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994).  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Services, Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585-586 (1986)).

## III.   Discussion

### A.   Count I: First and Fourteenth Amendment Rights pursuant to § 1983

#### 1.   Procedural Due Process

As Plaintiff indicates, he is no longer pursuing a procedural due process claim as to his demotion, but only as to the events surrounding his termination.  Resp. to Mot. 1 at 13. Plaintiff's complaint regarding this lack of due process comes from an allegation of  "lack of fair process and forum in the face of the retaliatory animus of the Defendants." *Id*.  As the Supreme Court has held, Plaintiff as a public servant, is entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 546 (1985).  Further, the due process rights which attach to a termination of employment must be evaluated in the context of a three-part test as illustrated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Using this test, a court must look at (1) the private interest affected; (2) the risk of an erroneous deprivation of the private interest by the procedures that were used and the value of an additional procedure being used; and (3) the Government's interest and the fiscal and administrative burdens an additional procedure would require.  *Id*.

The *Loudermill* requirements were sufficiently satisfied by both the availability of the pre-determination hearing and the occurrence of the post-termination arbitration, as well as the many levels of administrative review that surrounded the decision to terminate Plaintiff.  *See Benavidez v. City of Albuquerque*, 101 F.3d 620, 627 (10th Cir. 1996).  This does not appear to be disputed by Plaintiff.  The *Mathews* test requirements, however, are contested here.  Turning to the first

prong of *Mathews*, Plaintiff did have a legitimate property interest in his employment that was affected by the actions of Defendants. This is not disputed by Defendants. Resp. to Mot. 1 at 20. This leads, then, to an examination of the second prong of the *Mathews* test, and whether Plaintiff was erroneously deprived of his employment by the procedures used to terminate him.

In this case, an initial investigation was conducted by independent professional investigators, overseen by an impartial law firm.  The termination was initially recommended by Captain Frank Rute, reviewed by former Chief John Denko, and then reviewed by City Personnel Director Arturo Rodriguez, before the decision was finally rendered by the City Manager.  Mot. 1, Exs. 8 & 9.  Plaintiff arguably waived his opportunity to have a pre-termination hearing.  Mot. 1, Ex. 8. When Plaintiff did appeal the termination decision, he became responsible for jointly picking an independent arbitrator.  Mot. 1, Ex. 2 at 36.  In this ensuing arbitration, Plaintiff was represented by counsel, was able to call three witness, was able to conduct cross-examination, and to make opening and closing arguments.  Mot. 1, Ex. 10.  In short, the hearing had all the hallmarks of a judicial proceeding.  Plaintiff's allegation that this proceeding was nothing more than a "kangaroo court" has not been subsequently proved by any pleadings.  First Am. Compl. at 5.  The Court cannot think of another procedure which would have afforded Plaintiff more of an opportunity to explain himself or to provide him a fair means of resolving his grievance.

Plaintiff argues, however, that in three instances, the procedures used were risking erroneous deprivation of his rights.  First, Plaintiff argues that because the independent investigators did not interview the Plaintiff, Anne Marie Romero, or his friend Peter Komis, the investigation was somehow compromised.  Resp. to Mot. 1 at 13-14.  Plaintiff does not argue further about why this may be so.  The independent investigator's report, however, provides some

Case 1:04-cv-00247-JEC-DJS   Document 128   Filed 01/05/06   Page 7 of 23

reasoning about the absence of at least two of these interviews.  It is clear from this report that investigator Gilbert Ulibarri reasonably tried to interview Anne Marie Romero, as he visited her place of business, spoke with Ms. Romero on the phone, and was told by Ms. Romero that she would return his call; but it was never returned. Mot. 1, Ex. 5 at 4.  Further, the report provides some reasoning as to why there was never an attempt to interview Plaintiff.  To the investigator's knowledge, only police officers could interview an employee about an administrative matter unless it had been agreed otherwise.  *Id*. at 6-7.  What is also apparent from this report, is that the investigation that was conducted was comprehensive and thorough, despite any perceived interviewing absences, as it appears at least three people were actually interviewed in the investigation, and many more people were contacted for the purpose of obtaining any information relevant to the investigation.

Despite the absence of a few, arguably necessary, interviews in the initial investigation, the procedures used in the post-termination arbitration did provide Plaintiff with an opportunity to not only tell his side of the story, but also to call witnesses which may have been neglected by the pre-termination fact-finding.  And, under *Loudermill*, "the adequacy of pre-termination procedures must be examined in light of available post-termination procedures." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1480 (10th Cir. 1993).  Further, the availability of such rigorous post-termination review in this case heeds the guidance of the Tenth Circuit in that, "due process is flexible and calls for such procedural protections as the particular situation demands." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1191 (10th Cir. 2004) (quoting *Mathews*, 424 U.S. at 334).  Indeed, in his post-termination hearing, Plaintiff was able to call witnesses and present any evidence which an arbitrator deemed relevant or admissible.  Plaintiff

7

has presented no evidence, or even a suggestion, in his pleadings that he was not able to accomplish this in the arbitration.  Plaintiff has also not suggested there was any bias or procedural problem stemming from the hearing officer, a retired state court judge with more than twenty years experience.  Mem. to Mot. 1 at 21.  The undisputed fairness of the post-termination arbitration definitely helps to rectify any potential previous neglect.

Second on his list of procedural grievances, Plaintiff claims that he was not provided a confidential pre-termination hearing.  Resp. to Mot. 1 at 14.  Defendants assert that it is undisputed that Plaintiff waived this right.  Reply to Mot. 1 at 10.  Plaintiff claims he did not want to proceed with the hearing because of the presence of Mr. Steve French.  Resp. to Mot. 1, Ex. 1.  Plaintiff's concern regarding Mr. French was his perceived dual role in the hearing as both a witness and an attorney for the City.  *Id*.  While there appears to be confusion about what would make the hearing confidential, and if it should have been allowed to proceed despite any confidentiality problems, it is beyond question that Plaintiff was represented both by counsel and two union representatives when this hearing was waived.  Mot. 2, Ex. 8.  The fact that the hearing was eventually waived does not negate that it was still a procedural opportunity available to Plaintiff.  Indeed, it appears clear to the Court that Plaintiff, by virtue of his representative Mr. Heshly, after an actual break in the proceeding to consider the best course of action available, waived this hearing after careful deliberation by himself and his representatives.  Resp. to Mot. 2, Ex. 1 at 7-8.  Further, Plaintiff knew what the charges against him were before attending the hearing, he was not terminated at the hearing, and although he was not able to tell his side of the story at this hearing, he was able to do so at his post-termination hearing.

Third, Plaintiff claims that "the initial layers of decision-makers had already displayed

retaliatory attitudes" toward him. Resp. to Mot. 1 at 14.  Plaintiff does not specify who these initial layers of decision-makers are or how they displayed their retaliatory attitudes in making the decision to terminate him.  The incident in question, insurance fraud by the Plaintiff, was only discovered following a series of phone calls by Anne Marie Romero to the City of Santa Fe Human Resources Office, and an eventual visit to the Office by Plaintiff himself.  *See* Mot. 2,  Ex. 10, Gage Dep. at 118:10-15.  It  was only after a thorough investigation by an outside law firm and an independent investigation firm that Plaintiff was recommended for discipline. Mot. 1, Ex. 5.  Plaintiff was first recommended for discipline regarding this incident not by any of his superiors, but by the written memorandum completed by the outside law firm, which actually recommended a criminal investigation. *Id*.  Plaintiff has not attributed any retaliatory motive or actions to the law firm or its investigators.  And, pursuant to the City of Santa Fe Personnel Rules and Regulations, classified employees like Plaintiff can only be terminated in accordance with specific procedures, which involves several levels of review.  *See* Mot. 2, Ex. 1.

The findings of Plaintiff's investigation were first presented in written form to the Personnel Director of the City of Santa Fe, Arturo Rodriguez.  Plaintiff has not submitted in his pleadings any reason Mr. Rodriguez would have a retaliatory attitude toward him.   Following the presentation to the Personnel Director, Captain Frank Rute first recommended Plaintiff's termination. Captain Rute also has not been accused of having any retaliatory motive toward Plaintiff, although Plaintiff expressed concerns about Captain Rute's use of compensatory time to other superiors when the Captain was a Lieutenant. Resp. to Mot. 2, Ex. 7, Archuleta Dep. at 177:9-13.  This complaint did not appear to have any effect on Captain Rute, however, but instead resulted in what Plaintiff characterizes as a forced transfer, although Plaintiff himself

9

admits that he requested a transfer.  Reply to Mot. 1, Ex. 9, Archuleta Appeal Hr'g Tr. at 81:33-45, July 12, 2001. Despite any inferences which may be derived from this incident, supervisory officers like Captain Rute do not have the authority to terminate employees.  Only the Chief of Police may make recommendations to the City Manager, who then makes the final decision of termination. Mem. to Mot. 2 at 11.

While Plaintiff's friend, Peter Komis, does claim that he heard then Chief of Police John Denko say he was going to "get" Plaintiff,  the Chief was not the only person to make the termination recommendation.   And, as Defendants point out, Peter Komis may not have been aware of the context in which Chief Denko's alleged statement was made, as the statement was not made directly to Mr. Komis, but instead to a Sergeant Salazar.  Resp. to Mot. 2, Ex. 8, Komis Dep. 66:11-25.  Of course, Chief Denko denies making any statement of the kind.  Reply to Mot. 1, Ex. 11, Denko Dep. 46:22-25.  Altogether, any scintilla of evidence that Plaintiff can provide as to any retaliatory motive from Chief Denko is unconvincing.  Further, even if any of the "initial decision-makers" had had a retaliatory motive, as Plaintiff claims, the many levels of review in place surrounding the termination proceeding still make Plaintiff's termination procedurally sound.  Indeed, the City Manager (another decision-maker Plaintiff has not in any way suggested to be biased against him)  rendered the final termination decision, and is apparently the only person who can actually discipline, pursuant to union contract and ordinance.  Mot. 2,  Ex.10, Salazar Dep. at 147:20-25.  Plaintiff's other two named Defendants, Leyba and Lennen, did not make a recommendation that Plaintiff be terminated.  Mem. to Mot. 2 at 12.  While an impartial tribunal is an integral part of due process, Plaintiff is not questioning the impartiality of the forum which actually decided his case, the post-termination arbitration, but instead makes the vague

assertion that "initial decision-makers" were biased against him.  Taking all of Plaintiff's assertions together, no charges of unfairness in any of the existing procedures has been established to the extent necessary to show a genuine issue of material fact.  The risk of erroneous deprivation here seems truly minimal. Therefore, the Court moves to the final step of the *Matthews* analysis.

The third prong of the *Matthews* test examines the government interest involved.  Here, Defendants purport to take this interest very seriously.  Indeed, as Defendants note, the City requires officers who are capable of honesty and integrity in all aspects of their lives.  See Mot. 1, Ex. 7, Denko Dep. 56:15-24.  A shortage of these necessary ingredients could compromise an officer's testimony in court proceedings, as well as prevent the City from portraying a positive image of a police officer to the public.  *Id*.  Plaintiff, himself, agrees that credibility is a necessary component in being a police officer. *See* Mot. 3, Ex. D, Archuleta Dep. 238:19-21.  Therefore, the City does have a strong interest in being able to terminate police officers who are not honest.  Further, the Court considers it unlikely that another procedure would be fiscally or administratively sound or necessary to protect an officer's rights in this type of situation.  To require more procedures either before or after a termination would impede on the government's interest in removing an unsatisfactory employee.  *See Loudermill*, 470 U.S. at 546.

Therefore, Defendants are found to have satisfied all procedural requirements as set forth in *Mathews*, and to have provided Plaintiff with the procedural due process required under the Fourteenth Amendment.  The Court finds no genuine issue of material fact left to resolve as to this point.

2.      Retaliation for First Amendment protected speech

11

Defendants argue that not only was Plaintiff not addressing matters of public concern in airing his grievances with the police department, but also that this speech was not a substantial or motivating factor in the decision to terminate the Plaintiff. Reply to Mot. 1 at 12.

The Court should note, first, that Defendants assert a collateral estoppel argument regarding the entirety of Plaintiff's constitutional claims in Count I.  Mem to Mot. 1 at 22. Defendants point to *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004), which uses a three-step test to determine whether a state agency's findings can be given preclusive effect. These three steps require that the state agency (1) act in a judicial capacity; (2) resolve disputed issues of fact properly before it; and (3) give the parties an adequate opportunity to litigate the issue before it.  *Id.* (citing *Univ. v. Tenn. v. Elliott*, 478 U.S. 788, 798 (1986).  These three steps are just the beginning of the analysis, however, as preclusive effect will only be granted to the extent it would have been in state court. *Salguero*, 366 F.3d at 1173.  Thus, New Mexico law must also determine if preclusion is proper.  *Id.*  The New Mexico test for preclusion is as follows: (1) the party against whom collateral estoppel is asserted must have been a party or a party in privity to the original action; (2) the two cases concerned the same ultimate issue of fact which was (a) actually litigated, and (b) necessarily determined in the first suit.  *Id.* (quoting *DeLisle v. Avallone*, 874 P.2d 1266, 1269 (1994)).

Assuming, without deciding, that all three *Elliott* steps have been met, the issue in question is still not collaterally estopped, as the New Mexico test for preclusion has not been met. In *Salguero*, the plaintiff's breach of contract claim had been decided previously by a state agency and then brought again in federal court, and was deemed to be collaterally estopped, as termination for just cause was deemed to be the ultimate issue in both proceedings. *Id.* at 1173-

12

1174. Here, the issue in question, in Count I at least, is Plaintiff's First Amendment concerns. The Court agrees that Plaintiff necessarily had a significant portion of the cause for his termination decided by the post-termination arbitration. The purpose behind this proceeding, however, was not for Plaintiff to argue First Amendment issues, but instead to rebut that he was terminated for just cause and to seek reinstatement. Therefore, Plaintiff did not have adequate opportunity to litigate this specific issue previously, and the Court will regard this issue on its merits.

For Plaintiff's speech to entitle him to the level of First Amendment protection he seeks, he must have been speaking about matters of public concern in the workplace, and then have been retaliated against accordingly. *City of San Diego v. Roe*, 543 U.S. 77 (2004); *Ballard v. Muskogee Reg'l Med. Ctr.*, 238 F.3d 1250, 1252 (10th Cir. 2001). Further, Plaintiff must survive what is known as the *Pickering* balancing test, in that (1) the speech involved a matter of public concern; (2) the employee's interest in commenting on matters of public concern outweigh the employer's interest in promoting the efficiency of the public services it performs through its employees; and (3) the speech was a substantial or motivating factor in the adverse employment decision. *Burns v. Bd. of County Com'rs of Jackson County*, 330 F.3d 1275, 1286 n. 7 (2003) (citing *Pickering* and its progeny). If the employee is able to prove each required element, then the burden shifts to the employer to show the same decision would have been reached in the absence of the protected conduct. *Burns*, 330 F.3d at 1286, n. 7.

The case of *Connick v. Myers* illustrates an example of speech which would not rise to the level of public concern, and an instance of speech which would meet the public concern threshold. 461 U.S. 138 (1983). In *Connick*, an assistant district attorney, who had opposed being

13

transferred to another department, was terminated after circulating a questionnaire to fellow assistant district attorneys. *Id*. at 138. This questionnaire posed several evaluative questions about the way that the district attorney's office was run. *Id*. These questions included queries about office transfer policy, office morale, the need for a grievance committee, confidence in supervisors, and whether employees felt pressure to work in political campaigns. *Id*. The Court evaluated the speech in question, determining that if speech is of public concern, it must "be fairly considered as relating to any matter of political, social or other concerns to the community." *Id*. Using this analysis, the Court held that only the speech regarding pressure to work in political campaigns was capable of being called a matter of public concern. *Id*. at 149. The Tenth Circuit has echoed this ruling, and has held that speech made in the context of ongoing personal employment grievances does not involve a matter of public concern. *See Hom v. Squire*, 81 F.3d 969 (10th Cir. 1996); *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990).

Here, the majority of the speech in question similarly does not rise to the level of public concern. Plaintiff claims that when speaking about seven separate incidents, he was speaking of matters of public concern. These incidents include, as Plaintiff characterizes them: (1) the constitutional rights of property owners; (2) the constitutional rights of a black individual who was a suspect in criminal sexual penetration case; (3) the compensatory time policies for Lieutenants and other commanders; (4) Plaintiff's forced transfer because of speaking about compensatory time policies; (5) the lack of procedures for suspects' arrests at night; (6) the inconsistent availability of sick leave for Marine Reserve boot camp; and (7) the inconsistency of allowing transfers only when one affidavit applies. Resp. to Mot. 1 at 3.

When evaluating whether speech can be deemed public concern, the Court must look at

14

the "content, form and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147.  This kind of examination is almost impossible with some of the vague allegations of "speech" submitted by Plaintiff.  Regarding these seven instances of speech, to the extent possible from the pleadings, still leaves a possible question of rising to the level of public concern about only two of them.  The case of numbers (3) through (7) clearly illustrate the kinds of speech that *Connick* declared were not matters of public concern.  As much as forced transfers and inconsistent sick leave may be troubling within a police department, or within any employer's realm, it is not a trouble to the greater public, nor should it be a matter for their concern.  Indeed, as made clear by *Connick*, "government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." 461 U.S. at 146.  Further, Plaintiff's speech about his concerns with the mismanagement of the Police Department were not made available to the general public, and Plaintiff did not seek to inform the public about any of his concerns.  Although Plaintiff does have the right to air his grievances in private and have them still protected under the First Amendment, the fact that his concerns were not made public weighs on the side of not being of public concern.  *Id*. at 148.  Indeed, the Court must examine whether Plaintiff's purpose was to bring an issue to the public's attention or to air a personal grievance.  *McEvoy v. Shoemaker*, 882 F.2d 463, 466 (10th Cir. 1989).  In this case, it appears that all of Plaintiff's speech arose either from contested discipline against him or from another personnel grievance within the Department.  This does not meet the definition of public concern.

Plaintiff's first and second instances of speech, however, may present a matter of public concern.  The Tenth Circuit has defined public concern as sufficiently informing an issue so as to

be helpful to the public in evaluating the conduct of the government.  *See Wilson*, 732 F.2d 765,

768 (10th Cir.1984)  As these two instances of speech clearly involved the questioning of an

individual's Constitutional rights, they may be qualified as speech that is of public concern.

Although the general public may not know all the specifics of a suspect's arrests, speaking out

about arresting someone specifically because of their race is a matter for public concern. *Connick*

at 148, n.8.  Also, the public may not have any great concern about when cars may be properly

towed from businesses, but the Constitutional rights of property owners and whether they are

restricted because a police department wants to handle matters like abandoned cars more

expeditiously, should be considered a matter of public concern as well.  What is troubling about

these two instances of speech, though, is that Plaintiff only appears to have objected to the

treatment of minority suspects or questioned the rights of property owners after he had been

subjected to discipline for his actions: either for not arresting a suspect or not allowing a car to be

towed.  If Plaintiff had initiated complaints about racial discrimination or the Department's

haphazard towing practices, the Court would be more inclined to regard them as speech of public

concern, and not as speech resulting from Plaintiff's particular grievances with the Department.

However, even if these two instances of speech by Plaintiff could be classified as matters of public

concern, they still must survive the other two prongs of the balancing analysis.

  The second part of the analysis, the employer's interest in maintaining the efficiency of the

Police Department through its employees, is substantial here.  While Defendants do not argue that

they have an interest in restraining their officers' speech for any reason, they do suggest that they

have a substantial interest in protecting their funds from embezzlement and in maintaining the

integrity and honesty of their officers.  Plaintiff suggests that the city's efficiency would be

enhanced if employees were allowed to question policies as well as perceived constitutional violations.  Resp. to Mot. 1 at 16.  In the Court's opinion, the Police Department does have a very valid efficiency interest in having grievance procedures go through the proper channels, even grievances about alleged Constitutional violations.  This interest is "particularly acute in the context of law enforcement, where there is a heightened interest ... in maintaining discipline and harmony among employees."  *Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th Cir. 1995) (quoting *Wulf v. City of Witchita*, 883 F.2d 842, 861 (10th Cir. 1989)).  The nature of police work in general, perhaps, demands more of a rigorous delineation between the time to work and the time to speak.  Therefore, the City and Police Department may have an even greater interest in promoting the efficiency of its operations than other government employers.  The Court finds that the balance thus far is not weighing in favor of Plaintiff; however, giving Plaintiff the benefit of the doubt, the Court chooses to examine the third prong of the analysis.

Finally, looking at the third prong of the test, it is quite clear that Plaintiff's speech was not the reason for, or even a substantial part of, the decision to terminate his employment.  The Tenth Circuit has made clear that there must be a connection between speech and an adverse employment action.  *Baca v. Sklar*, 398 F.3d 1210, 1221 (10th Cir. 2005); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 208-209 (10th Cir. 1997).  As noted above, the issue of whether Plaintiff was terminated for his speech entitled to First Amendment protection is not collaterally estopped solely because of Plaintiff's post-termination arbitration decision, which did not recognize or decide anything close to a First Amendment issue.  The Court may still give credit to the findings of this hearing, however, to the extent that it establishes Plaintiff's speech was not the substantial reason for his termination.  Accordingly, it was found by the hearing officer that there was

sufficient cause to terminate Plaintiff on the charges brought, perpetrating insurance fraud.

Further, Plaintiff mounts very little evidence that he was terminated for anything other than just

cause. Even when taking into consideration all alleged events of retaliation or retaliatory motive

because of Plaintiff's speech, there is no reason to believe anything other than insurance fraud was

the substantial motivation for the termination.

More specifically, it appears that Plaintiff was commended by his superiors for his speech

in one of the two instances still in question, regarding the constitutional rights of property owners.

Resp. to Mot. 2, Ex. 2.  It is hard to reconcile a recorded commendation with a motive of

retaliation for Plaintiff's speech.

Further, Defendants assert they still would have terminated Plaintiff in the absence of any

protected speech.  The Court does not need to examine this assertion, as the *Pickering* analysis

already weighs heavily against Plaintiff.  The evidence presented of this assertion is so compelling,

however, that the Court wishes to recognize its significance.  Defendants claim that all

Department employees who falsely listed insurance beneficiaries were terminated or resigned prior

to being terminated.  Mem. to Mot. 1 at 31.  This is not disputed by Plaintiff. *See* Resp. to Mot. at

7.  Defendants go into more detail about each individual who was disciplined for the same

transgression, but as this information is not disputed by Plaintiff, it is not necessary to address

here.

Therefore, as only two instances of the speech in question could possibly be deemed

matters of public concern, the Police Department has a legitimate interest in maintaining the

efficiency of its operation, and these instances of speech were still not a substantial factor in

Plaintiff's termination, the Court finds Plaintiff is unable to present a genuine issue of material fact

18

regarding his First Amendment claim.

3.      Substantive Due Process

As noted in the Court's previous order (*Doc*. 124), Plaintiff's remaining substantive due

process claim must stand or fall with his First Amendment claim.  As the Court has not recognized

a valid First Amendment claim exists here, the Court now holds that no substantive due process

claims remains for its consideration either.

**B.      Count II: §1983 claim**

Plaintiff claims that he was both demoted and terminated for exercising his right to petition

for redress of grievances.  Resp. to Mot. 1 at 14.  Besides these two visible actions, Plaintiff

claims that his complaints manifested in a pattern of retaliation by  Defendants. First Am. Compl.

at 4.

The Court has decided in a previous order (*Doc*. 118), that Count II may only encompass

Plaintiff's claim to the extent that his procedural due process rights under § 1983 were violated.

Plaintiff suggests that this claim may be so broad as to examine all disciplinary events occurring

while Plaintiff was employed with the City of Santa Fe Police Department to establish a pattern of

retaliation extending from before Plaintiff's demotion through his termination. As the Court has

made clear in its previous ruling, however, it can now only examine the Count II claim to the

extent Plaintiff was denied a fair forum when addressing his state rights.  Because Plaintiff

concedes that only his termination is still in question for purposes of this motion, the forum which

addressed Plaintiff's termination is all the Court should be concerned with.

As the issue of whether Plaintiff did receive a procedurally fair forum for addressing his

termination has already been discussed exhaustively under Plainitff's § 1983 procedural due

process claim under Count I, it is unnecessary to address the issue again here.  The Court finds

that no material issue of fact exists regarding whether Plaintiff received a procedurally fair forum

in addressing his termination as was his right under § 1983.  Therefore, summary judgment is

granted as to Count II.

### C.        Count VI--Breach of Contract Claim

Defendants assert that Plaintiff's breach of contract claim is barred by collateral estoppel.

Mem. to Mot.1 at 22.   Plaintiff posed no argument to this assertion in his responsive pleading.

*See* Resp. to Mot. 1.  Even if Plaintiff's one-sentence mention of the breach of contract claim

(Resp. to Mot. 1 at 2) somehow satisfies the burden necessary to show a material issue of fact,

Defendants are correct in their assertion that the claim is still barred by collateral estoppel.

Under *Elliott*, the Supreme Court has held that federal courts must give findings of fact

rendered by state administrative agencies the same preclusive effect they would receive in that

state's court for § 1983 claims.  478 U.S. at 799.  As noted previously, the Tenth Circuit has

agreed that three *Elliott* conditions must be satisfied for this preclusive effect to take hold.

*Salguero,* 366 F.3d at 1173.  These conditions are as follows: (1) the state agency must act in a

judicial capacity; (2) the state agency must resolve disputed issues of fact properly before it; and

(3) the parties must have had an adequate opportunity to litigate the issue.  *Id*.

As to the first requirement, an agency is determined to have acted in a judicial capacity

when it is "required to investigate facts, or ascertain the existence of facts, hold hearings, and

draw conclusions from them, as a basis for their official action." *Id*.  This type of fact-finding

clearly occurred in this case.  The arbitration proceeding in question allowed for a hearing which

included the presentation of evidence, witnesses and argument.  The arbitrator was neutral and

jointly appointed and had the experience and intellectual capacity necessary to draw the requisite conclusion from the facts presented.

The second prerequisite is met by the arbitrator resolving issues of fact that were properly before him. Under the collective bargaining agreement between the City of Santa Fe and the Fraternal Order of Police Santa Fe Police Officer's Association, an arbitrator is allowed to render a decision in the appeal of a disciplinary action. Mot. 1, Ex. 10 at 36. This decision must be "based upon the facts established by the testimony and documents presented in the case." *Id*. There is not even an assertion by Plaintiff that the arbitrator arrived at his decision from any other place, or from any other motivation, than the evidence presented. Therefore, this prong is duly satisfied as well.

The third condition requires that the parties had an adequate opportunity to litigate the issues. Nothing has been pleaded which would suggest that Plaintiff was not given this opportunity. Plaintiff rejected discovery pre-hearing, but at the hearing he was represented by counsel, made opening and closing statements, called and cross-examined witnesses and introduced exhibits. The Tenth Circuit has held that this is enough to satisfy whether an adequate opportunity to litigate has been given. *See Salguero*, 366 F.3d at 1174; *Atiya v. Salt Lake County*, 988 F.2d 1013, 1019 (10th Cir. 1993).

Turning, then, to the New Mexico law prerequisites, as indicated previously, courts must give preclusive effect to arbitration proceedings when the party opposing collateral estoppel was a party to the arbitration, the present cause of action is different from the arbitration, and the issue subject to collateral estoppel was actually litigated and necessarily determined in the arbitration. *Rex, Inc. v. Mfrd. Hous. Comm'n. of N.M.*, 892 P.2d 947, 952 (N.M. 1995).

21

Here, Plaintiff was a party to the arbitration.  At the arbitration, Plaintiff primarily contested the validity of his termination, and sought reinstatement.  The current charges seek damages for breach of contract. These are recognized as different causes of action under *Rex. See Id.* at 957.  While different causes of action are at stake here, the underlying issue of whether Plaintiff was terminated for just cause was litigated in the arbitration proceeding, and is the same issue presented again here. *See Salguero*, 366 F.3d at 1174.

Therefore, the Court finds that the issue is barred by collateral estoppel, as the arbitration proceedings found that sufficient cause existed to terminate Plaintiff.  Mot. 1, Ex. 11.  No material fact remains in dispute as to this claim, and thus, summary judgment is granted.

### D.  Defendants Denko, Lennen and Leyba's Motion

As summary judgment has been granted on all counts as to all Defendants, it is unnecessary to consider whether it would be granted, as well, to the individual Defendants bringing their separate motion.

Wherefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Counts I, II, and VI of the First Amended Complaint (*Doc*. 88), filed September 14, 2005  is **granted;**

22

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment in their

Individual Capacities (*Doc.* 82), filed September 9, 2005 is **granted**.

DATED this 5th day of January, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

      Maureen A. Sanders, Esq.
      Duff Westbrook, Esq.
      Sanders & Westbrook, P.C.
      Albuquerque, New Mexico

Counsel for Defendants:

      Stephen G. French, Esq.
      Robyn Hoffman, Esq.
      French & Associates, P.C.
      Albuquerque, New Mexico

      James P. Sullivan, Esq.
      Sullivan Law Firm, P.A.
      Santa Fe, New Mexico